UNITED STATES BANKRUPTCY COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re:  G & M ENTERPRISES, INC., | : | Case No. 10-21932REF |
| Debtor | : | Chapter 7 |

| | | |
|---|---|---|
| DAVID A. EISENBERG, TRUSTEE OF | : | |
| THE ESTATE OF G & M ENTERPRISES, | : | |
| INC., | : | Adv. No. 10-2154REF |
| Plaintiff | : | |
| v. | : | |
| C & J SERVICES, INC., | : | |
| Defendant | : | |

# MEMORANDUM OPINION

# I.   INTRODUCTION

In this adversary proceeding, Debtor asks that I excuse its insouciance about defending itself.  I entered default judgment against Defendant on August 8, 2011, and Defendant now asks that I vacate that judgment.  I will not do so.  Both Defendant and its counsel were entirely aware of everything that happened in this litigation, but were somnolent in their failure to respond to Trustee's efforts to advance this case.  When Defendant and its counsel finally decided to seek my reconsideration of the default, their approach was insufficient.

At the hearing on Defendant's motion for reconsideration, Defendant offered an affidavit of an office manager rather than presenting live testimony of a principal. I did not permit the affidavit to be admitted into evidence. Solely because I rejected the offered affidavit, Defendant requested that I continue the hearing. Upon my further consideration, I will admit the affidavit into evidence and I will therefore deny Defendant's motion for a continuance as moot. I will deny Defendant's motion for reconsideration on the merits, taking the affidavit fully into account. This Memorandum Opinion contains my findings of fact and conclusions of law and supports my Order of even date herewith. Through my Order, I deny the request for a continuance as moot and deny the motion for reconsideration on the merits.

# II.  BACKGROUND

## A.  PRE-HEARING PROCEDURAL HISTORY

The procedural history of this adversary proceeding, particularly the issuance of numerous formal notices of pleadings and orders, is instructive. Plaintiff/Trustee filed his complaint initiating this matter on December 1, 2010. Trustee sought the recovery of certain sums that were alleged by Debtor to be owed to the estate by Defendant.  On December 3, 2010, Trustee served the summons and complaint on Defendant, via first-class mail, addressed specifically to the attention of Gale Humlhanz, an acknowledged principal and agent of Defendant.[1]  Defendant never answered the complaint.[2]  On January 5, 2011, three days after the date by which Defendant was obliged to answer the complaint, Karl D. Cooper, Esquire, entered his appearance on behalf of Defendant.  Through my Order dated January 19, 2011, I ordered Trustee to proceed with an appropriate motion for default pursuant to Bankruptcy Rule 7055 or face dismissal of the case for lack of prosecution.  On January 31, 2011, Trustee filed his request for entry of

---

[1]      Service by first-class mail addressed to Ms. Humlhanz constituted proper service pursuant to Fed. Rule Bkrtcy Proc. 7004(b)(3).  In Paragraph 3 of Defendant's Affidavit of Marie Snyder (the "Snyder Affidavit"), filed on November 6, 2012, Ms. Snyder identified herself as the office manager of Defendant. Ms. Snyder also acknowledged that Ms. Humlhanz "ran" Defendant and was a principal and employee of Defendant.  Snyder Affidavit, ¶ 4.a.

[2]      Defendant's refusal to answer the complaint continues to this day.  Often, in requests for reconsideration of a default, a diligent party will attach its proposed answer to its motion, thereby showing both its good faith and its meritorious defense.  Defendant has elected not to do so.

default by the Clerk. Trustee served Defendant by first-class mail and Mr. Cooper

was served by email through the Court's Notice of Electronic Filing.[3] Trustee also

served the request by mail on Mr. Cooper. The Clerk entered default against

Defendant on February 9, 2011. The Clerk's entry of default was served on both

Defendant and Mr. Cooper.

By my Order dated February 10, 2011, I denied Trustee's request that

I enter default judgment against Defendant because the relief should have been

requested through a motion for default judgment. My February 10, 2011 Order

was served on Defendant and Mr. Cooper on February 12, 2011. On February 16,

2011, Trustee filed his renewed motion for default judgment against Defendant.

Trustee again served both Defendant and Mr. Cooper. On March 2, 2011, Mr.

Cooper filed Defendant's response to Trustee's motion for default judgment. A

hearing on Trustee's motion for default judgment was scheduled on March 24,

2011, but was continued first to April 7, 2011, and then to April 26, 2011. On

April 25, 2011, Trustee and Defendant filed a stipulation[4] through which Trustee

would withdraw his motion for default judgment if Defendant filed its answer to

the complaint within 20 days. Defendant also agreed in the stipulation to provide

certain discovery to Trustee. Defendant claimed that it had difficulty gathering the

---

[3]    Service of the motion on Defendant by first-class mail and via the Court's electronic service
system constituted proper service pursuant to Fed. Rules Bkrtcy Proc. 9014(b) and 7004(b)(3). Trustee
mailed and served all future motions on Defendant in the same, correct manner.
[4]    Mr. Cooper signed the stipulation on behalf of, and as counsel for, Defendant.

necessary documents to prepare an appropriate response. I approved the

stipulation through my Order dated April 28, 2011, which was served on

Defendant and Mr. Cooper on April 30, 2012.

When nothing had been filed on the docket more than two months

later, I entered another Order, dated July 7, 2011, requiring Trustee to file an

appropriate motion pursuant to Bankruptcy Rule 7055 or face dismissal for lack of

prosecution. On July 14, 2011, Trustee filed a renewed motion for default

judgment against Defendant and served Defendant and its counsel with the

renewed motion. On August 1, 2011, Trustee certified that no response to his

renewed motion had been filed. I entered judgment against Defendant in the

amount of $84,542.63 through my Order dated August 8, 2011.[5] Once again,

notice of the Order entering judgment was served on both Defendant and its

counsel on August 10, 2011. On August 24, 2011, the Clerk's Office closed this

adversary proceeding.

Nine months later, on May 9, 2012, Trustee moved to reopen the case

because his efforts to collect on the judgment against Defendant had been

unsuccessful. Defendant had refused to comply with his requests for discovery

relating to its assets. Trustee based his request to reopen on the need to accord

---

[5]    I had waited a few extra days before entering judgment, in a fruitless effort to allow Defendant to
finally wake up and file an answer to avoid default judgment.

relief to the Debtor/Trustee and for other cause under Section 350 of the

Bankruptcy Code, 11 U.S.C. § 350. Trustee was attempting to obtain assets that he

could distribute to creditors and that would assist him in his administration of

Debtor's estate. Again, Trustee served both Defendant and Mr. Cooper with the

motion to reopen. Trustee certified no response to the motion to reopen on May

24, 2012, and I reopened this case through my Order dated May 29, 2012.

On May 29, 2012, Trustee filed his motion to compel the deposition

of Ms. Humlhanz, which he served on both Defendant and Mr. Cooper. On June

13, 2012, Trustee certified no response and I entered an Order, dated June 18,

2012, compelling the deposition of Ms. Humlhanz. Cary B. Hall, Esquire,

Defendant's new counsel,[6] had not yet entered his appearance in this case. On

June 20, 2012, therefore, notice was served solely on Defendant and Mr. Cooper.

In October 2012, Defendant and its counsel finally ceased ignoring

Trustee's proceedings in this Court. On October 19, 2012, almost two years after

this litigation started, over fourteen months after the default judgment had been

entered, seven months after Defendant's bank account had been garnished,[7] and

four months after I ordered Ms. Humlhanz to submit to being deposed, Mr. Hall

---

[6]     As discussed below, Mr. Hall represented Defendant at this time and had contacted Trustee's
counsel the preceding March on behalf of Defendant to discuss the default judgment.
[7]     See n.14, infra.

finally entered his appearance for Defendant.[8]  On that same date, Mr. Hall filed

Defendant's motion to reconsider the judgment entered against Defendant on

August 8, 2011, fourteen months previously.  Mr. Hall self-scheduled an

evidentiary hearing for the motion on November 6, 2012.  Trustee filed his answer

to the motion for reconsideration on October 23, 2012.  On November 6, 2012,

counsel for Trustee and counsel for Defendant appeared in Court for the

evidentiary hearing scheduled by Mr. Hall on Defendant's motion for

reconsideration.

---

[8]      The record does not reflect when Mr. Hall was formally retained by Defendant, but Trustee's
counsel remarked (without contradiction) that Mr. Hall had contacted him about the judgment against
Defendant in March or April 2012.  See the oral recording of the hearing at 10:02:00 a.m. to 10:02:45
a.m.

# B.  ADMISSIBILITY OF THE SNYDER AFFIDAVIT AND DEFENDANT'S MOTION FOR CONTINUANCE OF THE NOVEMBER 6, 2012 HEARING

On November 6, 2012, immediately before the hearing, Defendant hand filed[9] the Snyder Affidavit on the docket in the Clerk's Office.  Mr. Hall offered the Snyder Affidavit as his sole evidence at the hearing with no prior notice to either opposing counsel or the Court.  Because the affidavit constituted hearsay (as Mr. Hall acknowledged), I declined to admit it into evidence at the hearing. Mr. Hall did not bring any witness to the hearing because, he claimed, Defendant's principal was out of town.[10]  He claimed that he had not anticipated that an evidentiary hearing would be necessary.  Although he had self-scheduled the date of the evidentiary hearing, Mr. Hall failed to suggest to either opposing counsel or the Court that he might or would need a continuance of the hearing based upon the unavailability of his witness(es).  Mr. Hall announced at the hearing that he was

---

[9]      Effective January 5, 2005 all attorneys were required to become electronic "Filing Users" within the CM/ECF system.  Attorneys who were not able to file electronically by that date, or who were thereafter unable to do so, may apply for an extension of time.  New attorneys may (should) register when and as they file documents in this Court.  Standing Order No. Misc. 03-3005, amended by Standing Orders No. Misc. 03-3011, No. Misc. 04-3009, and No. Misc. 04-3011.  See also User's Manual for Electronic Case Filing, ¶¶ 1(A) & (B).

[10]      Mr. Hall gave no excuse for his failure to bring Ms. Snyder (the affiant in the proposed affidavit).

not familiar with bankruptcy practices and procedures generally[11] and that he had

made incorrect assumptions about the appropriate procedures.

I did not admit the Snyder Affidavit into evidence at the hearing and

Mr. Hall did not contest that decision. Defendant now argues in its brief that many

courts allow affidavits to be admitted as substantive evidence. That argument is

indisputable. Defendant refers me to rules and decisions in which courts have

decided that they may use affidavits in lieu of a live witness. For example, Federal

Rule of Civil Procedure 43(c) states:

> **Evidence on a Motion**. When a motion relies on facts outside the
> record, the court may hear the matter on affidavits or may hear it
> wholly or partly on oral testimony or on depositions.

I understand quite well that I may consider affidavits for issues outside the

pleadings to determine a motion. In my Practices and Procedures, I expressly

address the use and admission of affidavits into evidence.[12] But the November 6,

2012 hearing was unquestionably scheduled by Defendant's counsel himself as an

evidentiary hearing. Neither the Court nor the Trustee had prior notice of his

intended reliance on a literally last minute affidavit to establish Defendant's entire

factual basis for reconsideration. Neither the Court nor the Trustee had notice that

---

[11]    Mr. Hall was also not familiar with my published practices and procedures. Paragraph B.7.a.
(Litigation Generally -- Presentation of Evidence) of my Judicial Practices and Procedures instructs on
the use of affidavits: "Judge Fehling permits the use of Rule 43(e) affidavits in lieu of testimony if the
parties consent to their use." The reference to Rule 43(e) is obsolete, having arisen from a prior version
of Rule 43, which was revised to the current Rule 43(c). The framework for his proper presentation of
affidavits is set forth nonetheless.
[12]    See n.11, supra.

his witness(es) would not be present. Both Trustee's counsel and I therefore anticipated a hearing with live witnesses and presentation of appropriate evidence.

My rejection of Defendant's proffered Snyder Affidavit was entirely correct. See In re Olick, 311 Fed. Appx. 529 (3d Cir. 2008). The Third Circuit Court in Olick reviewed the bankruptcy court's rejection of an affidavit at a reconsideration hearing because the affiant was not available for cross-examination. The Court decided that the rejection was authorized by Federal Rule of Civil Procedure 43, which is made applicable to bankruptcy courts by Federal Rule of Bankruptcy Procedure 9017. Id. at 532 n.5. Pursuant to Olick, therefore, my continued rejection of the Snyder Affidavit would be correct.

In the first case cited by Defendant, Iannella v. Sullivan, Civ. A. No. 93-CV-0620, 1995 WL 273608, at *2 (E.D. Pa. May 5, 1995), the District Court rejected the use of an affidavit as unreliable and unpersuasive for a variety of reasons. Defendant also incorrectly cites a Third Circuit Court decision that purportedly "recognized and blessed" the use of affidavits. Skehan v. Board of Trustees, 669 F.2d 142, 154-55 (3d Cir. 1982). The Skehan court specifically recognized the issue, however, to be whether the proceeding before the lower court had actually been a "hearing." If it were a hearing, affidavits would be inappropriate. The Circuit Court concluded, "[T]he [trial] court did not make a conclusive determination that a hearing would take place." Id. at 154. Affidavits,

10

therefore, might or might not be appropriate. In the dispute now before me, no

such uncertainty exists. Defendant's counsel himself scheduled the November 6,

2012 matter as an evidentiary hearing and not as argument. Upon Defendant's

further pressing my consideration of the Snyder Affidavit, however, I have decided

to admit it into evidence.

Despite my decision to admit the Snyder Affidavit into evidence, I

note that certain specific allegations in the Snyder Affidavit are troubling. Many

paragraphs contain double hearsay, other statements are inadmissible for other

reasons, and others are wholly belied by the official docket in this case. Paragraph

1 of the Snyder Affidavit explains Ms. Snyder's duties for Defendant, including

her receiving mail for Defendant. Paragraphs 2 - 18 attempt to convey a

meritorious defense to the complaint. Defendant correctly understands the

importance of establishing a valid defense to open a default judgment. See Frost v.

Subramanian (In re Subramanian), 245 Fed. Appx. 111, 115 (3d Cir. 2007)(the

threshold question is whether the defendant has stated a meritorious defense).[13]

Paragraphs 19 - 21 of the Snyder Affidavit explain Mr. Cooper's

involvement in the litigation on behalf of and as counsel for Defendant, including

---

[13]    Subramanian is designated "not for publication." See Federal Rule of Appellate Procedure 32.1.
The Third Circuit Court's Internal Operating Procedures ("IOP") note that the court, by tradition, does not
cite to its non-precedential opinions because they are not decided by the full court. The IOP discourages
lower court judges from relying on unpublished opinions, but does not prohibit it. Because Defendant
advanced Subramanian, I will consider it. I note, furthermore, that Defendant misstated critical aspects of
Subramanian, which I will address below.

his failure to advise Defendant about what was happening in this adversary

proceeding. Paragraph 22 is missing. In Paragraph 23, Ms. Snyder avers that she

became aware of the default judgment in spring 2012 when one of Defendant's

bank accounts was frozen.[14] In Paragraph 24, Ms. Snyder says she does not recall

receiving any notice of the default judgment and that she would have remembered

any such notice given her personal involvement in this case.

As noted above, the Snyder Affidavit suffers from double hearsay and

other infirmities and much of it must be rejected. In Paragraph 7, Ms. Snyder

could not know that a principal of Debtor recognized that the proposed joint effort

would be a "learning experience" unless he or she told Ms. Snyder -- which

would be hearsay.[15] In Paragraph 8, Ms. Snyder refers to certain verbal

agreements (from the context, Ms. Snyder meant to refer to "oral" rather than

"verbal" agreements) between the parties, which agreements constitute hearsay.

Any such attempt to modify a written contract orally would also fall short of

admissibility as parol evidence. In Paragraph 12, Ms. Snyder refers to errors in a

spreadsheet prepared by someone who was unaware of some oral agreement

between the parties. The information in Paragraph 12 was allegedly told to Ms.

---

[14]    References at the hearing to the timing of this event placed it in March 2012. See oral recording of the hearing at 9:59:45 a.m. Trustee's counsel stated without contradiction that a writ from the Bucks County Court of Common Pleas froze the bank account in early to mid-March 2012.
[15]    This statement might be an admissible exception to hearsay pursuant to Federal Rule of Evidence 804(b)(3), although I am uncertain if this rather mild statement of Ms. Snyder truly constitutes a statement contrary to Debtor's proprietary or pecuniary interests when made. In any event, as noted immediately below, Defendant faces an issue with admissibility under the Pennsylvania's Dead Man's Act.

Snyder by Debtor's principal, Mr. Michael Humlhanz, who is now deceased.  Mr.

Humlhanz statements constitute hearsay.[16]  The importance of the inadmissibility

of the statements by Debtor's principal in the Snyder Affidavit cannot be

minimized.  Defendant's defense to Trustee's action is based solely on these

alleged statements between the principals of Defendant and Debtor.  The

Pennsylvania Dead Man's Act[17] excludes from my consideration the statements of

Mr. Humlhanz, Debtor's deceased principal.  See <u>Keegan v. Fahnestock & Co.,</u>

<u>Inc.</u>, No. Civ. A. 95-5998, 1996 WL 530000, at *4 - 8 (E.D. Pa. Sept. 16,

`1996)(Pennsylvania Dead Man's Act renders Debtor's principal statements to

Defendant's principal incompetent).

  In Paragraphs 20 and 21, Ms. Snyder relays statements purportedly

said to her by Mr. Cooper.  This is not objectionable hearsay, however, because

Defendant is not offering Mr. Cooper's statements for the truth of the matters

stated.  To the contrary, Mr. Cooper's statements are wholly incorrect, but they are

offered as justification for Defendant's failure to file its answer, thereby leading to

the default.

  I disregard Ms. Snyder's statements that are based on hearsay and not

on facts within her own knowledge.  I also disregard other statements that have

---

[16] This statement might also be excepted from hearsay.  <u>See</u> n.15, <u>supra</u>.
[17] Fed. Rule of Evid. 601; 42 Pa. C.S.A. § 5930.

13

evidentiary impediments to their admissibility.   Iannella, 1995 WL 273608,C&J at

*2.

Unless Ms. Snyder is making false statements in her affidavit,[18] she is

saying that Defendant's mail receipt protocol utterly broke down for well over a

year.[19]  As noted above and as shown on the docket in this case,[20] every notice,

pleading, motion, and order was mailed to Defendant.  Some were mailed to Mr.

Cooper, but every notice, pleading, motion, and order was mailed to Defendant.

At least eight notices about possible or actual defaults against Defendant were

mailed to Defendant as well as being served on counsel.[21]  The notices were

addressed to Ms. Humlhanz, but Ms. Snyder made no distinction between mail

identifying a particular recipient and mail that was addressed to the company

generally.  Whether Ms. Humlhanz or Ms. Snyder received the mailed notices of

the default judgments, they were mailed to Defendant's uncontradicted address and

constitute good and proper service.  Defendant, even disregarding the notices and

---

[18]     Because Ms. Snyder was not present in Court when her affidavit was offered, Trustee's counsel
had no opportunity to examine her credibility or actual knowledge of the statements in her affidavit and
Defendant's counsel had no opportunity to show that she might be a reliable witness.
[19]     Neither Defendant nor its counsel nor Ms. Snyder claims that the address that both Trustee and
the Bankruptcy Noticing Center used was incorrect for serving notices on Defendant.
[20]     I may take judicial notice of the docket entries in this case under Fed. R. Evid. 201 (incorporated
into bankruptcy cases by Fed. R. Bankr. P. 9017).  See Maritime Elec. Co., Inc. v. United Jersey Bank,
959 F.2d 1194, 1200 n. 3 (3d Cir. 1991); Levine v. Egidi, No. 93C188, 1993 WL 69146, at *2 (N.D. Ill.
March 8, 1993); In re Paolino, No. 85-00759F, 1991 WL 284107, at *12 n. 19 (Bankr. E.D. Pa. Jan. 11,
1991); see generally Nantucket Investors II v. California Federal Bank, (In re Indian Palms Assoc., Ltd.),
61 F.3d 197 (3d Cir. 1995).
[21]     See Docket entries 8, 9, 10, 11, 14, 22, 24, and 25, which constitute notice that the Trustee is
seeking default judgment or has obtained it.

mailings to Mr. Cooper, had notice of all aspects of this litigation,[22] including the

entry of the default judgment as well as Trustee's efforts to enforce it.[23]

When I ruled on the inadmissibility of the Snyder Affidavit,

Defendant immediately sought more time by orally asking for a continuance.

Trustee opposed the request[24] and I was disinclined to grant it. Defendant

inveighed upon me to allow him to provide a brief supporting his position, which I

did. Defendant timely filed his brief on November 16, 2012.

Pending before me at this time are Defendant's request for a

continuance[25] and motion for reconsideration. First, Defendant's counsel made the

oral request for a continuance during the November 6 hearing, to allow him to

present live witnesses and other evidence in light of my refusal to admit the Snyder

Affidavit. Second, Defendant's motion for reconsideration is at hand. At the

November 6, 2012 hearing, counsel for Defendant expressly limited the basis for

---

[22]     Presumably, notices would also have gone to Defendant directly (in addition to or rather than Mr. Cooper) from Trustee's Bucks County Court of Common Pleas collection procedures.

[23]     Below, I will parse the portions of the Snyder Affidavit that survive any objection in addition to being primarily hearsay statements by Ms. Snyder. Those remaining portions constitute Defendant's statement of the defense it would offer in response to Trustee's complaint.

[24]     In the nearly seven years that I have been on the bench, this is the first time that Trustee's counsel has opposed another party's request for a continuance. He offered the following reasons for opposing the request: (1) His recurring difficulties in getting any response from Defendant to his requests for information; (2) the absence of all cooperation whatsoever from Defendant's counsel; and (3) no prior notice.

[25]     Obviously, I am treating Defendant's request for a continuance as a motion, but counsel did not phrase it as such at the November 6 hearing. He simply requested a continuance.

reconsideration to Federal Rule of Civil Procedure 60(b)(6).[26] This Memorandum Opinion constitutes my findings of fact, conclusions of law, and discussion supporting my accompanying Order, through which I deny the request for a continuance as moot and deny the motion for reconsideration on the merits.

---

[26]      Federal Rule 60 is expressly made applicable to proceedings in bankruptcy pursuant to Bankruptcy Rule 9024.

# III. <u>DISCUSSION</u>

Defendant languished until October 2012 when it filed its motion for reconsideration of the default judgment at long last.   Prior to seeking reconsideration of the judgment:  (1) Defendant itself and its counsel[27] had notices of the default judgment entered in this adversary proceeding for well over a year; (2) Defendant itself and its counsel had notice of Trustee's efforts to collect on the judgment in state court by garnishing Defendants' bank account for at least seven months; and (3) Defendant itself and its counsel had notice of Trustee's discovery efforts[28] to collect on the default judgment for at least five months.  Defendant and both of its counsel slept on Defendant's rights.

---

[27]      Mr. Cooper first became involved in this dispute when he communicated with Trustee on behalf of Defendant in March 2012.

[28]      Trustee reopened the case and sought an order requiring Ms. Humlhanz' to appear for a discovery deposition.

# A. DEFENDANT'S REQUEST FOR A CONTINUANCE

Defendant starts its argument by reminding me that I have the discretion to manage my courtroom and docket as I choose. Of course I do. Defendant goes on to warn me that my discretion is not unfettered. Of course it isn't. Defendant refers me to <u>Setchko v. Twp. of Lower Southampton</u>, No. CIV. A. 00-CV-3659, 2001 WL 1132218 (E.D. Pa. Sept. 21, 2001) and <u>Clark v. Lutcher</u>, 77 F.R.D. 415 (M.D. Pa. 1977). <u>Setchko</u> and <u>Clark</u> describe three factors that a court should consider when deciding whether to grant a party's request for a continuance: (1) Saving time and effort of the Court, counsel, and the litigants; (2) hardship on either party; and (3) expedition of the case on the court's calendar. The courts in both <u>Setchko</u> and <u>Clark</u> considered these three factors and denied the requests for continuances.

In <u>Setchko</u>, plaintiff had been deported from the country and could not participate in his litigation. Counsel asked to withdraw and for a continuance. After considering the three factors, the court denied both requests. In <u>Clark</u>, imminent civil litigation included factual and legal issues that were at the heart of, and might have prejudiced, related criminal proceedings of plaintiffs. Again, after considering the three factors, the court denied plaintiff's request to continue the civil trial. These two cases, advanced by Defendant, establish that even in

extraordinary cases in which the reason for the requested continuance was not entirely a party's doing, a court's decision not to continue a proceeding is proper and entirely within the court's purview. Nevertheless, Defendant advances Setchko and Clark as establishing the three factors that I will weigh.

My cursory review of the three factors shows me that, if I were to exercise discretion here, I should do it in favor of denying the continuance. At this point in the case, no time will be lost to any party by my denial of the continuance. I appreciate counsel's warning me that if I deny its motion, Defendant will appeal the decision. He proceeds to caution me that if Defendant wins its appeal and the matter is back before me, the Court and the parties will have wasted time. I have less faith in the success of his appeal of this decision than counsel.

The second factor is equally baseless. No party will improperly or unnecessarily suffer any hardship from a continuance. The delays following numerous notices and Defendant's decisions not to act must fall at Defendant's feet. True, some of the inaction might fall at its counsel's feet,[29] but it is Defendant's lack of action that controls my decision in this case.

---

[29]    Mr. Cooper appears to have been responsible for, or at least aware of, the seven-month delay from August 2011 (entry of judgment) to March 2012 (bank account frozen). And Mr. Hall appears to have been responsible for, or at least aware of, the seven-month delay from March 2012 (Defendant knew about the judgment and the bank freeze) to October 2012 (Defendant finally filed for reconsideration).

Finally, granting the continuance would not expedite any aspect of this litigation on my calendar.  My initial denial of Defendant's oral request for a continuance was correct.

As I mentioned above, however, the three factors do not come into play because I have decided to consider the merits of the Snyder Affidavit.  My decision makes Defendant's request for a continuance moot.  The sole reason that Defendant asked for the continuance was my rejection of his proffered affidavit.  Upon my decision to admit the Snyder Affidavit and to consider it on the merits, Defendant's request for a continuance is moot and I will deny it as unnecessary.

I will now consider the merits of Defendant's motion for reconsideration.

# B. FACTORS CONTROLLING DEFENDANT'S MOTION FOR RECONSIDERATION

## 1. Factors for reconsideration under Rule 60(b)

Three factors that I should consider in the present litigation are described in Subramanian, which has been suggested to me by Defendant in its brief:

> A court ruling on a motion to set aside a default judgment under Rule 60(b)(1), "must consider the following three factors: (1) whether the plaintiff will be prejudiced; (2) whether the defendant has a meritorious defense; and (3) whether the default was the result of the defendant's culpable conduct."

245 Fed. Appx. at 115 (quoting, in part, Gold Kist, Inc. v. Laurinburg Oil Co., 756 F.2d 14, 19 (3d Cir. 1985).[30] Defendant fails to establish any one of the three (conjunctive) factors, which leads me to deny reconsideration. Furthermore, Defendant misstates the holding of the Subramanian Court. At page 3 of its brief, in Section II.A., Defendant states, without giving a specific page reference: "The Third Circuit has already held [in Subramanian] that a judgment against a party

---

[30] The Subramanian decision listed these three factors for a court's analysis of Rule 60(b)(1). They apply also, as Defendant advocates, to Rule 60(b) generally. See, e.g., Johnson v. Berke Young International, LCC, No. 07-2240, 2009 WL 997081, at *1 (E.D. Pa. April 13, 2009)(applied Subramanian to a Rule 60(b) motion). The Johnson court noted that "the Third Circuit does not favor defaults and instructs that all 'doubts should be resolved in favor of setting aside the default and reaching a decision on the merits.'" Id. at *1, quoting, Gross v. Stereo Component Systems, Inc., 700 F.2d 120, 122 (3d Cir. 1983). Finding all three of the Subramanian factors, the Johnson court granted the motion for reconsideration. Id. at *3. As is discussed throughout this Opinion, however, Defendant has failed to establish each of the three factors.

occasioned by the gross misconduct of its counsel is a [sic] extraordinary matter warranting relief under Rule 60(b)(6)." The Court in Subramanian actually said that the test was finding both (1) the gross negligence of counsel and (2) the absence of neglect by the party. Subramanian, 245 F. Appx. at 117.[31] The Circuit Court went on to declare that debtors had failed to prove that their counsel was grossly negligent. Furthermore, the Court noted that the debtors were fully aware of the default because they had been given copies of the default motions, which were mailed to them. Id. The Court found no evidence that the debtors made inquiries to their counsel or the court following receipt of the notices. Id.

I will address the three Subramanian factors.

### a.  **Prejudice to plaintiff**

First, Trustee has expended time, effort, and money over the nearly two years from January 2011, when Defendant failed to answer the complaint, through today. Trustee has been prejudiced solely by Defendant's delay. Any further delay would unnecessarily exacerbate Trustee's frustration.

---

[31]     On this issue, the Subramanian Court relied on and cited another decision advanced by Defendant: Boughner v. Secretary of Health, Education, & Welfare, 572 F.2d 976, 978 - 79 (3d Cir. 1978).

22

b. **Meritorious defense**

Second, the evidence of Defendant's alleged defense to Trustee's suit

against it must fall based both upon the double hearsay nature of what Debtor's

principal is alleged to have said and upon the incompetence of his statements under

the Pennsylvania Dead Man's Act. The material facts that survive my review of

the objectionable contents of the Snyder Affidavit follow:

In 2009, Defendant and Debtor entered into some arrangement

through which they submitted a bid for certain construction together.[32] They were

awarded the construction bid.[33] Debtor prepared a spreadsheet for the project that

showed that Defendant owed payment for certain charges -- labor, equipment

rental, and other expenses at normal business rates.[34] Debtor withdrew its labor

and resources from the project, leaving Defendant to complete the project at its

own expense, incurring a significant economic loss.[35] Debtor prepared invoices to

Defendant for project expenses owed by Defendant.[36] Mr. Cooper told Ms. Snyder

that he could resolve the adversary proceeding through set-offs or counterclaims

---

[32]   Snyder Affidavit, ¶ 6. I cannot tell from Ms. Snyder's brief description of the arrangement whether she (a non-lawyer office manager) is competent to decide that the parties' arrangement was legally a joint venture, a partnership, a sub-contract, or some other legal relationship. Some writing must have existed to establish the relationship.
[33]   Snyder Affidavit, ¶ 9.
[34]   Snyder Affidavit, ¶ 11.
[35]   Snyder Affidavit, ¶ 14.
[36]   Snyder Affidavit, ¶ 15.

against Debtor (Trustee).[37]  In late spring or early summer 2011, Mr. Cooper told

Ms. Snyder that the adversary proceeding had been dismissed, the case was closed,

and Defendant no longer had anything to worry about concerning the case.[38]

Without more information (arising from admissible evidence) of its

defense, Defendant falls short of establishing a meritorious defense.  To meet the

Subramanian test, Defendant is obliged to fulfill "a more stringent standard" and to

"set forth with some specificity the grounds for [its] defense."  Subramanian, 245

Fed. Appx. at 115.  Accord, JP Morgan Chase Bank, N.A. v. Pandolfelli (In re

Pandofelli), Bkrtcy. No. 09-18941(DHS), Adv. No. 09-2068(DHS), 2011 WL

2708831, at *3 (Bankr. D.N.J. July 11, 2011).  Defendant failed to establish the

second factor - a meaningful defense to the allegations in Trustee's complaint.

### c.  **Default was the result of Defendant's culpable conduct**

Third, the assurances from Mr. Cooper to Defendant about resolving

this litigation were made in late spring or early summer 2011, months before the

entry of the default judgment in August 2011.  Yet Defendant relies on these

assurances in its attempt to justify the long delay in trying to undo the default

judgment.  After late spring or early summer 2011, Defendant received numerous

notices of the pending and actual entry of the August 2011 default judgment from

---

[37]    Snyder Affidavit, ¶ 20.
[38]    Snyder Affidavit, ¶ 21.

24

both Trustee and this Court. These notices from both Trustee and the Court negate

any reasonable, rational reliance by Defendant on Mr. Cooper's prior assurances.

Assuming for argument that Defendant might have satisfied the first

two factors (it did not), it failed completely to satisfy the third. The default was

solely the result of the unexcused, culpable conduct of Defendant, manifested by

its long-standing failure to act. The docket in this case shows multiple formal

notices sent directly to Defendant relating to every event in this litigation. For the

sake of further argument, however, I will assume it is also the fault of Mr. Cooper

that Defendant failed to oppose the entry of the judgment in August 2011. Also for

the sake of further argument, I will further assume it is the fault of Mr. Cooper that

Defendant failed to do anything in this court for the seven months from the entry of

judgment in August 2011 until Defendant unquestionably learned about the

judgment when Trustee froze its bank account in March 2012. Finally, I will

assume for the sake of argument that Mr. Cooper's inattention constitutes gross

neglect of his duties owed to Defendant.[39]

When Defendant unquestionably knew about the default judgment (its

bank accounts had been garnished), Defendant made no request for reconsideration

---

[39]    If Defendant's loss is truly through the gross negligence, misrepresentation, and (therefore)
malpractice of Mr. Cooper, Defendant has an alternative party through whom Defendant could avoid both
an incorrect denial of its claim (if any) and an wrongful obligation to pay Trustee pursuant to the default
judgment. Similarly, the delay from March 2012 through October 2012 may also have resulted from Mr.
Hall's actions, inactions, or advice to Defendant.

for seven months.  This single aspect of the delay dominated my colloquy with

Defendant's counsel at the November 6 hearing.  Defendant maintains that it did

not receive the notices from either the Court or Trustee, hanging its failure to act

on Mr. Cooper.  Throughout 2011 and into early 2012, Defendant received

numerous notices from the Trustee and this Court that, first, the litigation was

proceeding and, second, judgment had been entered.  But no notice was more

direct and obvious than the frozen bank account suffered at the hand of the

Trustee's garnishment to collect on the judgment.  Defendant's counsel could offer

nothing excusing Defendant's failure to act for seven months after the

garnishment.  From the date of the garnishment, the long delay and refusal to act

are solely attributable to Defendant's culpable conduct.

Defendant has not met its burden to qualify for reconsideration under

the three-factor Subramanian test offered by Defendant as controlling.  I will

further expand upon Subramanian and other cases that review additional

requirements for reconsideration.

### d.  Other requirements for reconsideration under Rule 60(b)(6)

First, relief under Rule 60(b)(6) is only available when the other

subsections of Rule 60(b) do not apply.  Subramanian, 245 Fed. Appx. at 117.  To

get relief under Rule 60(b)(6), a party must show that it will experience extreme

and unexpected hardship if the judgment stands. <u>Budget Blinds, Inc., v. White</u>,

536 F.3d 244, 255 (3d Cir. 2008).   Extraordinary circumstances rarely exist when

the party seeks relief from a judgment that resulted from the party's deliberate

choices. <u>Id.</u> Defendant contends, in total opposition to every one of the numerous

notices mailed by Trustee and this Court, that it did not get notices about the

default judgment.  Defendant admits, however, that it knew about the judgment in

March 2012 and waited seven months to move for reconsideration.  The delay in

seeking reconsideration of the default judgment after March 2012 resulted solely

from Defendant's deliberate choice to do nothing.

Second, Rule 60(b)(6) is only available when the other Rule 60(b)

subsections do not apply.  Those other subsections have an express one-year period

of limitations.  The Third Circuit has long held that Rule 60(b)(6) cannot be used

simply as a catchall to avoid the one-year limitation.  <u>Gambocz v. Ellmyer</u>, 438

F.2d 915, 917 (3d Cir. 1971); <u>Adams v. County of Erie</u>, No. 1:07-cv-316-SJM,

2012 WL 4483429, at *6 (W.D. Pa. Sept. 27, 2012).  The sole premise on which

Defendant proceeds is the negligence of its counsel.  But to prevail with that

argument, Defendant must also have shown that it acted diligently to redress the

problem. <u>Adams</u>, 2012 WL 4483429, at *7.[40]

---

[40]     A party seeking relief pursuant to Rule 60(b)(6) "must show 'extraordinary circumstances'
suggesting that the party is <u>faultless</u> in the delay." <u>In re Rockaway Bedding Inc.</u>, 454 B.R. 592, 598

Defendant showed no justification whatsoever for having ignored the

judgment in August 2011.[41]  Ms. Snyder apparently denies receiving the formal

notice of the entry of the judgment sent to Defendant.[42]   On the other hand, she

does not deny, but acknowledges, that Defendant was wholly aware of the

judgment in March 2012 but did nothing until October 2012.  Defendant has made

no showing of diligence.  Defendant satisfied none of the three <u>Subramanian</u>

elements necessary to establish a valid claim for reconsideration.  I will deny

Defendant's motion for reconsideration for this reason.

## 2. **Defendant's other arguments**

At the November 6, 2012 hearing, Mr. Hall asked that equitable

tolling relieve Defendant of responsibility for the time from the August 2011 entry

of the default judgment to the March 2012 freezing of Defendant's bank accounts.

He also raises the perceived support he finds by stating that he could file an

independent action under Rule 60(d)(1), which means I should grant his request for

reconsideration rather than waste the time of deciding reconsideration and then

---

(Bankr. D.N.J. 2011)(citations omitted)(emphasis added).  Defendant is not faultless.  Defendant at least
shares fault for the seven months from August 2011 to March 2012.  Defendant is entirely at fault,
however, for the seven months from March 2012 to October 2012.  Defendant might argue that it was not
solely at fault, because Mr. Hall also knew about the garnished bank account and, therefore, the judgment.
Defendant has not attributed, however, any of the delay to Mr. Hall.

[41]       The excuse of what Mr. Cooper is alleged to have told Defendant occurred in spring or early
summer 2011.  Many, many notices were served on Defendant thereafter and they showed that Mr.
Cooper's statements about dismissal of the case were incorrect.

[42]       Clearly, the address to which all notices were sent was correct.  Defendant responded to the initial
summons and complaint, however inadequately, shortly after service of them.  All later notices from
Trustee and the Court were mailed to the same address.

facing Defendant's new, independent action.  I examine and reject both of these arguments.

### a.  Equitable tolling

In our colloquy about Defendant's defense of equitable tolling, Mr. Hall was silent in the face of a critical question I posed to him:  Why had Defendant chosen to wait seven months after it knew its bank account had been garnished in March 2012 to file for reconsideration in October 2012?[43]  He had no response.  Equitable tolling requires some modicum of diligence.  The Third Circuit Court has referred to equitable tolling as an extraordinary remedy that courts apply sparingly.  Perry v. Commonwealth of Pennsylvania, 328 Fed. Appx. 785, 787 (3d Cir. 2009)(not for publication[44]).  The principles of equitable tolling do not extend to garden variety claims of excusable neglect, but require deceit or some other extraordinary grounds for relief.  Id.  Accord DeMathews v. The Hartford Ins. Co., 402 Fed. Appx. 686, 689, n. 4 (3d Cir. 2010)(not for publication).  Extraordinary circumstances rarely exist when a party seeks relief from a judgment that resulted from the party's deliberate choices.  DeMathews, 402 Fed. Appx. at 689.

---

[43]    See oral recording of hearing at 10:01:45 a.m. to 10:02:00 a.m.

[44]    See n.13, supra.

As described above, Defendant ignored numerous notices from the Trustee and the Court and sat on its hands. Even when its bank account was garnished, Defendant chose to do nothing for seven months. Equitable tolling is only available when a party pursues its rights diligently, but some extraordinary circumstance stood in its way, preventing a timely filing. <u>Reed v. Phelps</u>, Civ. Act. No. 06-445-LPS, 2012 WL 4056248, at *2 (D. Del. Sept. 13, 2012). Equitable tolling is therefore not available to Defendant to excuse its dalliance and deliberate lack of attention.

### b. <u>Independent action</u>

Defendant introduced a new tack in its brief -- the "independent action" approach to reconsideration, including the inability to raise res judicata as a defense.[45] Defendant's counsel introduces the independent action provision by referring to <u>Schum v. Bailey</u>, 578 F.2d 493 (3d Cir. 1978). Defendant's reliance on <u>Schum</u> is misplaced and erroneous. First, the <u>Schum</u> Court specifically rejected the concept of res judicata because it had not been raised in the trial court. <u>Id.</u> at 498, n. 6. Second, the issues of independent action and res judicata were not raised in the majority decision at all, but arose solely from a lone judge concurring on other grounds. Defendant's statement that the independent action provides an

---

[45] The basis for the concept of independent action, as presented by Defendant, is Rule 60(d)(1), which provides: "**(d) Other Powers To Grant Relief.** This rule does not limit a court's power to: (1) entertain an independent action to relieve a party from a judgment, order, or proceeding; . . ."

additional mechanism for an aggrieved litigant to request equitable relief from a

trial court may be true under certain unique circumstances. But it is certainly not

the holding of and was not recognized in Schum (except by the concurrence).

Even the concurring jurist in Schum would decline to apply the

concept unless a party was affirmatively misled into a damaging course of action.

Id. at 505. The concurring judge noted that if a party were induced into taking

some action by the fraudulent misrepresentation of fact by an opponent, the

defrauding opponent should not and would not enjoy any advantage obtained as a

result of the fraudulent wrongdoing. Id. at 506. The Schum decision does not

provide any comfort or support to Defendant who has alleged no even mildly bad

conduct by Trustee. Defendant's own inaction has resulted in its difficulties --

not the actions of any other person, and specifically not of the Trustee.

Defendant accurately quotes the Third Circuit in its case, Publicker v.

Shallcross, 106 F.2d 949, 952 (3d Cir. 1939): "We believe truth is more important

than the trouble it takes to get it." The Publicker court was faced with reconciling

two conflicting 19th century decisions of the United States Supreme Court, United

States v. Throckmorton, 98 U.S. 61 (1878), and Marshall v. Holmes, 141 U.S. 589

(1891). The two cases addressed assertions of fraud in misleading a party to take a

position that led to the innocent party losing the litigation. Throckmorton said that

when a case is done, it's done. Marshall found an avenue of protection for a

defrauded litigant by opening the judgment.  In Publicker, the Court presaged its

final decision when it described appellant as arguing that its wickedness should be

rewarded.[46]   The Third Circuit adopted the Marshall rationale, which allowed a

defrauded litigant to re-enter the fray.   Publicker, 106 F.2d at 949.  Presented with

sufficient proof (or, at least, allegations) of the fraud of the successful, but

conniving, litigant in the underlying litigation, the Court uttered the above quote

and affirmed the lower court's decision to re-open the case.  Defendant has not

alleged the slightest wrongdoing of Trustee.  Defendant cannot avail itself of either

the Schum or the Publicker decisions.

I have echoed the quoted phrase from Publicker over and over again

over my seven years as a judge.  I am uncomfortable with defaults and routinely

allow cases to be re-opened, orders to be stricken, and judgments to be vacated.

But each of the re-opened, stricken, or vacated events had a diligent party or

counsel who more or less immediately noted the occurrence of the adverse action

and moved promptly to seek to undo that action.  This is not that case.

Judge Joy Conti succinctly analyzed Rule 60 and the independent

action concept in Shearer v. Buschmeier (In re G & G Investments, Inc.), No. 10-

374, 2010 WL 4929081 (W.D. Pa. Nov. 30, 2010).  Rule 60, she declared, allows a

---

[46]      My reading of other passages in the Publicker decision leads me to believe that the Court was
perturbed with questionable advocacy perpetrated by appellant's counsel.

separate, independent action for fraud on the party and fraud on the court. Id. at *8 (omitting citations). For a claim to qualify as an independent action under Rule 60(d), the party must show that the extraordinary relief is necessary to avoid a sufficiently gross, grave miscarriage of justice. Id. The claim of an independent action remains subject to laches[47] and fraud must be pled. Id. An independent action can only be permitted in the case of the most egregious conduct and must be supported by clear, unequivocal, and convincing evidence. Id. The requirements of a claim of fraud on the court[48] are (1) intentional fraud, (2) by an officer of the court, (3) directed to the court itself, and (4) which deceives the court. Id. Once again, Defendant did not even attempt to allege any of the elements of this relief. It falls from laches and from the absence of any fraud whatsoever by Trustee.

Circumstances warranting relief under Rule 60(d)(1) are more limited than under Rule 60(b)(6), which are more limited than under the other subsections of Rule 60(b). In re Rockaway Bedding, Inc., 454 B.R. 592, 599 (Bankr. D.N.J. 2011). Defendant has not satisfied the grounds for relief under Rule 60(b)(6). Defendant therefore has not satisfied the more extraordinary grounds required for relief under Rule 60(d)(1).

---

[47]    Accord, Averbach v. Rival Mfg Co., 809 F.2d 1016, 1020 (3d Cir. 1987)(quoting the notes of the Advisory Committee on Rules). As noted throughout this Opinion, laches presents Defendant with an insurmountable hurdle -- Defendant consciously decided not to remedy the judgment for at least seven months after knowing Trustee was enforcing the judgment in state court (March 2012) and for 14 months after the judgment was entered (August 2011), in spite of Mr. Cooper's suggestion (late Spring or early Summer 2011) that Trustee's case had been dismissed.

[48]    Judge Conti's analysis would logically apply to any claim of fraud on the parties.

From another tack altogether, Defendant is not eligible for relief under Rule 60(d)(1) for an independent action, because it has not brought any such independent action.  Wilson v. Dows, No. 1:08-CV-2219, 2011 WL 2895143 (M.D. Pa. July 15, 2011).  Relief under Rule 60(d)(1) is therefore not available to Defendant to excuse its months of inaction and deliberate lack of attention.

# IV. <u>CONCLUSION</u>

Defendant itself is more responsible than both Messrs. Cooper and Hall for its delay in seeking reconsideration of Trustee's default judgment against it. This is Defendant's liability and Defendant had crystal clear notice (the garnished bank account) in March 2012 that Trustee had default judgment entered against Defendant. Defendant waited over a year from the entry of the default judgment to move for reconsideration. That unexcused and unexplained delay, but especially the delay after March 2012 forfeited any claim Defendant might have advanced that it innocently, faultlessly, and inculpably had default judgment entered against it. Defendant therefore does not qualify for reconsideration pursuant to Rule 60(b)(6), through equitable tolling, or pursuant to Rule 60(d)(1). Based upon the above discussion, therefore, I will deny Defendant's motion for reconsideration through the accompanying Order.

Date: January 9, 2013

BY THE COURT

Richard E. Fehling
United States Bankruptcy Judge